### COURSE et al. v. STEAD AND WIFE, et al.

*Amendment.—Jurisdiction in error.—Averment of citizenship.—Judicial notice.*

The *teste* of a writ of error is amendable, of course.

The value of the land in controversy may be shown by affidavit, to sustain the writ of error, if it do not appear on the record.

If a new party and subject-matter be brought before the court, by supplemental bill, it must show that the court has jurisdiction, by reason of the citizenship of the parties to such supplemental bill.

The federal courts will take judicial notice, without proof, of the laws of the several states.

ERROR from the Circuit Court of the Georgia district, sitting in equity. On the record, it appeared, that upon the 5th of May 1795, an order has been made, in the case of *Stead et al., executors of Stead*, v. *Telfair et al.*, the legal representatives of Rae & Somerville,(a) "that 3634l. 14s. 7d. sterling, with interest at 5 per cent, from the 1st of January 1774, to the 5th of May 1795, deducting interest from the 19th of April 1775, until the 3d of September 1783, be paid to the complainants in that suit, with 5 per cent. *on the amount of principal and interest, *for making the remittance to Great Britain. That the partnership property of Rae & Somerville, admitted by the defendants to be in their hands, be first applied to the payment of the complainants. That the lands belonging to J. Rae, or J. Somerville, deceased, referred to in the answers of the several defendants, and the title-deeds of which they admitted to be in their possession, be sold by the marshal, and the proceeds be applied to satisfy the decree; the deeds to be deposited with the clerk in three months."

On the 15th of November 1796, a second order was made by consent (PATERSON, Justice, presiding), upon the report of the clerk, that, on the 4th of January 1796, the reremained due to the complainants $11,196.77; "that the

---

(a) The order was made when BLAIR, Justice, presided. The deduction of interest during the war (this being a British debt) has not received the sanction of all the federal judges. See 2 Dall. 104, in note.

[1] An appeal is allowed in cases of equity, admiralty and prize, by act of 3d March 1803 § 2 (2 U. S. Stat. 244); and R. S. § 692.

Course v. Stead.

partnership property of Rae & Somerville, in the hands of Telfair, be sold, and the bonds, &c., delivered over, under a general assignment. That if these assets are not sufficient to pay the debt, the remainder of Somerville's property be sold; and after paying a prior judgment, shall be applied to the debt of the complainants. That a bond, admitted by W. Stephens, one of the defendants, to be in his hands, given by R. Whitfield & Co. to J. Rae, senior, be delivered to the complainants. That certain negroes, in the custody of S. & R. Hammond and J. Habersham, be sold, and applied to the payment of the complainants' debt."

On the 2d of May 1797, Elizabeth Course, executrix of Daniel Course was made a defendant, upon motion of the solicitor for the complainants; and on the 2d of April 1798, the supplemental bill was filed, which gave rise to the present writ of error, and on which a *subpœna* issued only against Elizabeth Course. This bill set forth the original bill of *Stead et al. v. Telfair et al.;* the orders and decrees above stated; and the outstanding balance on the 4th of April 1798, amounting to $8479.58. It then alleged, " that J. Rae, senior, was seised, in his lifetime, of a tract of 450 acres of land, which was subject to the decree in favor of the complainants; and that Elizabeth Course held the said tract of land unjustly, and without title. And it concluded with praying a discovery of the title, and surrender of the premises in satisfaction of the decree; and that the other defendants may disclose assets, &c."

On the 3d of April 1799, Elizabeth Course filed an answer to the supplemental bill, in which she set forth, " that she found among her late husband's papers a deed of the 5th of May 1792, executed by F. Courvoise, tax-collector of Chatham county, to him, as purchaser at public auction, of the said tract of land, for 128*l.* 19*s.* 4*d.*, for which a receipt was indorsed, and the deed recorded on the 24th of October 1792. That in virtue of the deed, possession was taken of the premises. That she believed the land came to J. Rae, by devise or descent from his father, was sold for non-payment of taxes, and was purchased, *bonâ fide,* *by her late husband, whose title, in fee, is       [*24 warranted by the tax-laws of the state; and as such is claimed by the defendant for herself and children."

The cause was heard, upon the former decree of 1796, the supplemental bill and answer before ELLSWORTH, Chief Justice, in May term 1799, when the court decreed, " that the pretended conveyance be set aside, and held as void; and the land sold to satisfy the debt of the complainants. Also, that certain negroes in the possession of William Stephens and Joseph Habersham, executors of Samuel Elbert, be sold and applied to the same object, &c."

The errors assigned upon the record (which consisted of a recital of the two orders of court, the supplemental bill and the proceedings on it, but not the original bill) were, in substance, the following:

1. It does not appear that the partnership property was first applied to the payment of the claimants' debt, conformable to the decree of the 25th of May, 1795: and, if so applied, it might have been sufficient.

2. The decree orders certain negroes in the possession of Habersham and Stephens, executors of Elbert, to be sold, whereas, it was denied, that the negroes were in their hands, but it was admitted that they were in the possession of the minor children of the said Elbert; and proof to the contrary was not made, nor were the children parties to the suit.

Course v. Stead.

3. The negroes, presumed to be assets of J. Rae, are ordered to be sold, exclusively of property in the hands of the other defendants, without equality or apportionment.

4. The facts stated in the answer are to be taken as true, since the complainants did not reply ; and thence it appears, that the purchase of the land was *bonâ fide,* for a valuable consideration, under the sanction of a public officer, whose acts were annulled by the decree, without any evidence of fraud or imposition.

5. The exhibits referred to in the supplemental bill (to wit, the two orders of court above mentioned) were not filed with the bill, and were inadmissible as evidence.

6. That all the heirs, as well as the widow of Daniel Course, should have been made parties, particularly the minors, who are under the peculiar protection of a court of equity.

7. Real and personal estate are on the same footing, by the law of Georgia, equally under the management of executors or administrators. And as there are other creditors to be affected by the decree, the legal representatives of Daniel Course should have been parties to the suit.

8. The facts on which the decree was founded do not appear on the record.

9. The court had not power, under the circumstances of the case, to order the sale of real estate.

*25 ] *Though this view of the record is given, for the sake of the points discussed and decided in the circuit court, the merits, on the errors assigned, were not discussed or decided in this court ; [1] but the following points occurred.

I. *Ingersoll,* for the defendants in error, objected, that the writ of error was not tested as of the last day of the last term of the supreme court ; nor, indeed, of that term at all ; for the court had risen before the day of its *teste.*

*Dallas* observed, in answer, that there was no rule, either legislative or judicial, prescribing the date of the *teste* of a writ of error ; that in Georgia, it might not be practicable, in many cases, to know the last day of the term of the supreme court, whose session was not limited ; that if the writ is issued, in fact, after the preceding term, and returned, *sedente curia,* to the present term, it is regular ; and that it is not like the case of a term intervening, between the *teste* of a writ of error, and the delivery of the record to the clerk of the court. (*a*)

BY THE COURT.—The objection is not sufficient to quash the writ of error. The *teste* may be amended by our own record of the duration of the last term ; and it is, of course, amendable.

II. *Ingersoll* objected that the writ of error was not directed to any circuit court ; for its address was "to the judges of the circuit court, holden in and for the district aforesaid ;" whereas, no district was previously named.

---

(*a*) See Blair *v.* Miller, *ante,* p. 21.

[1] For decisions on the merits, see Telfair *v.* Stead, 2 Cr. 407, and Stead *v.* Course, 4 Id. 403.

Course v. Stead.

· · *Dallas*, in reply, observed, that the district of Georgia was indorsed on the writ, that the attestation of the record was in Georgia, and that the record returned was from the circuit court of the Georgia district.

BY THE COURT.—The omission is merely clerical. We wish, indeed, that more attention were paid to the transcribing of records; but there is enough, in the present case, to amend by; and therefore, let the omission be supplied.

III. *Ingersoll* objected, that the value of the matter in dispute does not appear, upon the record, to be sufficient to sustain a writ of error. The land, which is the immediate subject of the supplemental bill, was sold for 128*l.* 19*s.* 4*d.*, and that is the only criterion of its value exhibited to the court.

*Dallas.*—The value of the property in dispute, must be its actual value for the purposes of jurisdiction. The price, at a forced sale for taxes, many years ago, cannot rationally be taken for the actual value of the land, with its meliorations. The court will, therefore, permit the plaintiff in error to ascertain the fact by affidavits, on notice to the opposite party. It was so done in *Williamson* v. *Kincaid* (*ante,* p. 20).

*BY THE COURT.—Let the rule be entered on the same terms, as in the case of *Williamson* v. *Kincaid.*[1]                                    [*26

These preliminary objections to the writ being obviated, and the depositions being returned, to prove the value of the land (which was sufficient to sustain the writ of error), *Dallas* argued for a reversal of the decree of the circuit court, on two grounds :(*a*) 1st, On the merits; and 2d, On the want of a description of the parties, so as to give a federal jurisdiction.

1st. *On the merits.*—The hearing on the bill and answer operates as a tacit admission of the facts stated in the answer; which is not contradicted in any respect; and which establishes Daniel Course's purchase of the land in question, as a fair and valid transaction. (Hind. Pr. Ch. 416–7, 289, 441.) The widow Course was not a party to the original bill; and cannot, therefore, be bound by the decree in that case. The defendants to the original bill are not parties to the supplemental bill; for process is only prayed and issued against the widow. Yet, the decrees in the original suit are referred to as exhibits, though not filed, in the supplemental suit; and in the supplemental suit, a decree is pronounced against the defendants in the original suit as well as against the widow, who is the sole defendant. Besides, the question is emphatically a question of assets to pay a debt, for which partnership property was first responsible; and the personal estates of the debtors before their real estates. Yet, no account is given of the partnership fund; and neither the minor heirs, nor other legal representatives of Daniel Course, are made parties to the suit, though their interest is expressly stated in the answer. (Hind. Pr. Ch. 2, 8, 10, 420, 283–4; Mitf. 39, 145.)

---

(*a*) The case was argued, on these grounds, at Washington, after the removal of the seat of government; but with this intimation, it is thought most convenient to continue the report, under the term i· which it commenced.

[1] See Bush *v.* Parker, 5 C   257; Richmond *v.* Milwaukee, 21 How. 391.

Course v. Stead.

2d. *On the want of description.*—The only descriptive addition to the name of Elizabeth Course, throughout the record, is that she is the "widow of Daniel Course, deceased ;" not stating that either he or she was a citizen of the state of Georgia. (*Bingham* v. *Cabot*, 3 Dall. 382; *Mossman* v. *Higginson, ante,* p. 12; *Turner* v. *Bank of North America, ante,* p. 8 ; *Turner* v. *Enrille, ante,* p. 7.) It would be extravagant, to infer citizenship from mere residence, nor can it be successfully urged, that because the parties to the original bill (which, by the by, is not attached to the writ of error) were well described, this court has jurisdiction on the supplemental bill, against a new party, not described, not pledged by any joint contract, and not connected in privity or interest with the defendants to the original bill. (Mitf. 31.)

*Ingersoll,* for the defendant in error, answered : 1st. *On the merits.*— The decree of the circuit court was not pronounced simply *on the *27] supplemental bill and answer ; but on the decrees in the original suit, which liquidated and fixed the *quantum* of the debt; the conveyance to Daniel Course ; and the tax-laws of the state of Georgia. The conveyance was charged to be a fraudulent, pretended deed, which was a matter of fact (3 Dall. 321); and it was ascertained (not merely by the inadequate consideration, but) by reference to the tax-laws, which did not authorize the sale at the time when it took place, nor at any time, if there were personal assets ; and consequently, the court was bound to regard it as a nullity. (*a*) The objection, on the score of parties, cannot prevail against the decree, that virtually finds the conveyance to be fraudulent ; and therefore, that no one claiming under it could derive a title or interest in the land. Besides, the widow Course is the tenant in possession of the premises, and the natural object of the supplemental bill ; she must be presumed to have given notice to all proper persons ; and after all, if the objection has weight, it is sufficient to answer, that no one will be bound by the decree, to whom, on principles of law and equity, it does not extend.

2d. *On the want of description.*—It is not necessary to describe the parties in the supplemental suit, which is merely an incident of the original bill, and must be brought in the same court. The citizenship, however, of the plaintiff in error does sufficiently appear, by reasonable presumption and necessary implication. It has never been decided, that the very term " citizens and aliens," must be used in the description ; but if the description fairly imports, that one party to the suit is an alien, and the other party a citizen ;

---

(*a*) When *Ingersoll* was about to read the statutes of Georgia, *Dallas* observed, that they were not recited on the record; and that it might be a question, whether their existence ought not to have been established, as a fact, in the court below. But the Court said, there could be no ground to refuse the reading of a law of any of the states.[1] It appeared, however, that, on the point of time, *Ingersoll* referred to the statute for a tax of a different year, from that in which the sale was made.

[1] s. p. Gwings *v.* Hull, 9 Pet. 607; Griffing *v.* Gibb, 2 Black 519 ; Cheever *v.* Wilson, 9 Wall. 108 ; Junction Railroad Co. *v.* Bank of Ashland, 12 Id. 226 ; Gordon *v.* Hobart, 2 Sumn. 402 ; Woodward *v.* Spafford, 2 McLean 168; Jasper *v.* Porter, Id. 579; Starr *v.* Moore, 3 Id. 354; Jones *v.* Hays, 4 Id. 521 ; Miller *v.* McQuerry, 5 Id. 469 ; Mewster *v.* Spalding, 6 Id. 54 ; United States *v.* Quinn, 8 Bl. C. C. 48; Bennett *v.* Bennett, 1 Deady 299 ; Merrill *v.* Dawson, Hemp. 562.

Priestman v. United States.

or that the parties are citizens of different states; the court will assert its jurisdiction.   Then, the purchase and possession of real estate announce the character of citizen; since aliens cannot purchase and hold real estate in Georgia; and the long residence of Daniel Course, the purchaser, and his family, in the state, is a circumstance strongly corroborative.   If the widow is sufficiently described, to show that she was a citizen of Georgia; there can be no doubt, that the complainants are sufficiently described as aliens.

BY THE COURT.—Having examined the record in the case of *Bingham v. Cabot*, we are satisfied, that the decision there must govern upon the present occasion.   It is, therefore, unnecessary to form or to deliver any opinion upon the merits of the cause.   Let the decree of the circuit court be reversed.